UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DANBURY AREA COALITION FOR THE RIGHTS OF IMMIGRANTS; EDUADORIAN CIVIC CENTER OF DANBURY; JUNTA FOR PROGRESSIVE ACTION, INC.; UNIDAD LATINA EN ACCION; and NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY <br><br> Defendant. | **COMPLAINT** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

By responding to discriminatory requests from local officials for federal immigration enforcement, Defendant U.S. Department of Homeland Security, and its component, U.S. Immigration and Customs Enforcement ("ICE"), knowingly and willingly participated in a campaign by the Mayor and Police Department of Danbury, Connecticut to target and harass immigrant and Latino communities.

Specifically, on September 19, 2006, upon the request of Danbury officials, ICE and the Danbury Police Department carried out an undercover "sting" operation directed at day-laborers who gather in Kennedy Park, a public park in Danbury. An undercover officer, dressed to appear as a building contractor, lured workers into his vehicle and drove them to a site where eleven workers were arrested and eventually placed in removal proceedings.

1. This is an action under the Freedom of Information act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief to compel the disclosure and release of agency records

improperly withheld from Plaintiffs by Defendant United States Department of Homeland Security ("DHS") and its component ICE.

2. Plaintiffs seek to compel the release of records on a matter of public concern, namely, ICE's immigration enforcement policies, practices, and activities in and around Danbury, Connecticut, including ICE's cooperation with local elected officials and the local police department to accomplish such enforcement. In particular, Plaintiffs seek to compel the release of records regarding an undercover sting operation carried out on September 19, 2006 in Danbury, Connecticut against day-laborers.

## JURISDICTION AND VENUE

3. This Court has both subject matter jurisdiction over Plaintiffs' claims and personal jurisdiction over Defendant agency pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

4. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a)(1), as all but one of the complainants reside in the District of Connecticut.

## PARTIES

5. Plaintiff Danbury Area Coalition for the Rights of Immigrants ("DACORIM") is an unincorporated association that advocates on behalf of immigrants' rights in and around Danbury, Connecticut. The principal place of business of DACORIM is in Danbury, Connecticut.

6. Plaintiff Ecuadorian Civic Center of Danbury, Connecticut ("Ecuadorian Civic Center") is a non-profit organization that provides social services and cultural activities, and advocates for the rights of Ecuadorian immigrants in and around Danbury, Connecticut. The office and principal place of business of the Ecuadorian Civic Center is in Danbury, Connecticut.

7. Plaintiff JUNTA for Progressive Action, Inc. ("JUNTA") is the oldest Latino, community-based non-profit organization in New Haven, Connecticut. Its mission is to provide services, programs and advocacy that improve the social, political and economic conditions of the Latino community in Greater New Haven, while nurturing and promoting its cultural traditions as it builds bridges with other communities. The office and principal place of business of JUNTA is in New Haven, Connecticut.

8. Plaintiff Unidad Latina en Accion ("ULA") is an unincorporated association that advocates on behalf of immigrants' rights in and around New Haven, Connecticut. The office and principal place of business of ULA is in New Haven, Connecticut.

9. Plaintiff National Immigration Project of the National Lawyers Guild, Inc. ("NIP") is a non-profit membership organization of immigration attorneys, public defenders, legal workers, grassroots advocates, and others working to secure fair and even-handed enforcement of the immigration laws. The office and principal place of business of NIP is located in Boston, Massachusetts.

10. Defendant United States Department of Homeland Security ("DHS") is the federal agency responsible for securing the nation's borders, including by enforcing immigration laws and managing the immigration process. ICE, a component of DHS, is responsible for enforcing federal immigration statutes. DHS is an agency within the meaning of 5 U.S.C. § 552(f).

## STATEMENT OF FACTS

### Immigration Enforcement in Danbury under Mayor Mark Boughton

11. Danbury was first settled by English colonists in 1685, in an area already home to the Paquioque Native Americans. The city of Danbury was incorporated in 1889. Danbury experienced growth in the 19th century, when it was known for its hat-making industry. In the

late 20th century, Danbury saw an influx of immigrants from Brazil, and in more recent years, from other Latin American countries, especially Ecuador. The August 2006 U.S. Census lists Danbury's population at 78,736. Unofficial counts estimate that there are currently 5,000 Ecuadorians and 15,000 Brazilians living in Danbury. Danbury was voted #1 "city to live in" by *Money Magazine* in August 1988, mostly due to low crime, good schools, and location. Danbury is currently one of the fastest-growing cities in Connecticut.

12. Danbury Mayor Mark Boughton, first elected in 2001, has focused his attention on the issue of immigration during the past several years. Mayor Boughton has been a leading advocate of strict immigration enforcement and of local government and police involvement in immigration enforcement. Through state and national lobbying efforts as well as the implementation of local policies directed at immigrant communities, Mayor Boughton has taken several affirmative steps to limit new immigration in Danbury, to enforce federal immigration laws, and to drive out immigrants already living in Danbury.

13. In a letter dated December 17, 2004 addressed to Eduardo Aguirre, Jr., Director of U.S. Customs and Immigration Services, Mayor Boughton stated that "Danbury Police and zoning enforcement officials have been aware of an influx of undocumented aliens for the past several years." Mayor Boughton requested additional federal enforcement of immigration laws in order to reduce Danbury's population of undocumented immigrants.

14. In a letter to Connecticut Attorney General Richard Blumenthal dated April 14, 2005, Mayor Boughton requested that the Attorney General enter into a Memorandum of Understanding with ICE that would deputize state or local police officers to enforce federal immigration laws, pursuant to 8 U.S.C. § 1257(g). State officials declined to pursue this course.

15. In a subsequent letter to Connecticut Governor Jodi Rell, Mayor Boughton stated that he had nevertheless instructed Danbury Police Chief Alan Baker to prioritize the resources of the Danbury Police Department ("DPD") to offer assistance with future federal and state immigration enforcement activities in Danbury.

16. In November 2005, Mayor Boughton helped found the group Mayors and County Executives for Immigration Reform. According to the group's website, the purpose of the group is to encourage immigration enforcement and "to lobby the President and Congress for assistance to local governments in managing the tremendous challenges posed by illegal immigration."

17. Over the past two years, Mayor Boughton and the DPD have also systematically targeted immigrant communities through numerous policies including discriminatory enforcement of city ordinances, such as housing code and vehicle registration regulations, shutting down neighborhood volleyball games, encouraging police harassment of day laborers, encouraging direct police enforcement of civil immigration laws upon stopping motorists for moving violations, and requesting from U.S. Senators and Representatives, as well as from ICE, federal assistance in enforcing immigration laws.

18. With Mayor Boughton's support, code inspectors have discriminatorily enforced Danbury's fire and building codes and parking regulations against Danbury's immigrant and Latino communities. For example, in a nighttime sweep on July 23, 2005, code enforcement officers shut down seven sites that serviced the Ecuadorian community's neighborhood volleyball games.

19. In April 2005, with Mayor Boughton's support, the Danbury Common Council considered an ordinance banning "repetitive outdoor group activities." The purpose of this

ordinance was to shut down the Ecuadorian community's volleyball games. Mayor Boughton also requested that the DPD aggressively police the volleyball games to achieve the same end.

20. The DPD has staged a number of traffic stops to investigate the immigration status of Latino drivers. For instance, on October 11, 2006 police stopped a Latino driver for failing to signal a turn. DPD arrested the driver and turned him over to ICE based on an outstanding deportation order.

21. The DPD has also repeatedly harassed day laborers in Kennedy Park as they gather to solicit employment. Police officers have threatened to cite or arrest the day laborers for interfering with the flow of traffic around Kennedy Park. This harassment culminated with the undercover sting operation carried out on September 19, 2006. The DPD incident report states that the DPD called ICE for assistance with the situation in Kennedy Park, in apparent retaliation for the use of the public park as a gathering spot.

22. Most recently, the Mayor announced a campaign to crack down on Danbury residents whose vehicles are registered out of state. Mayor Boughton claims that out-of-state registrations cheat the city out of tax dollars. However, the community is acutely aware that this campaign is actually designed to target immigrants, some of whom find it easier to register a vehicle out of state, especially in Massachusetts.

23. The repeated communications from Mayor Boughton to ICE, whether made directly to the agency or indirectly via Connecticut's Senators and congressional delegation, together with the widespread media accounts of the Mayor's initiative to rid Danbury of certain immigrants, rendered ICE fully aware of its role in the Mayor's campaign.

24. The release of the requested records will help clarify the extent of ICE's role in Danbury's implementation of these policies.

25. This information is of great public interest because the Defendant's role in the enforcement of immigration laws within the context of Danbury's larger campaign targeting immigrants has created fear among immigrant and Latino communities, has placed immigrants and Latinos at imminent risk of unlawful arrest, and has deterred immigrants and Latinos from exercising their Constitutional rights.

### The Arrest of Eleven Men on September 19, 2006

26. On September 19, 2006, eleven men were arrested in Danbury, Connecticut, and were ultimately taken into ICE custody. ICE served those men with Notices to Appear, charging each as being removable from the United States.

27. The arrests were made as part of an undercover sting operation targeting day-laborers in Danbury, Connecticut. The sting involved an undercover officer dressed as a building contractor who drove a vehicle to Kennedy Park, a known day-laborer site in Danbury, to solicit workers to demolish a fence. The undercover officer transported the eleven men to the purported worksite in an unmarked vehicle. Once at the worksite, the laborers were handcuffed and were notified that they were under arrest.

28. Information regarding the ICE-DPD sting operation on September 19, 2006 is of public concern. Plaintiffs seek to determine whether this sting operation was carried out in accordance with applicable federal, state, and local statutes and regulations.

29. Plaintiffs have provided advice and support to those men who were arrested during the sting operation, including arranging for undersigned counsel to represent men arrested in the sting and as advocates for immigrants' rights, assisting in that representation, organizing public education events and peaceful demonstrations, and generally advocating against future ICE-DPD

collaboration. Plaintiffs have an interest in ensuring that the rights of immigrant communities are not violated.

### Plaintiffs' FOIA Requests to ICE

30. By letter to ICE dated October 24, 2006, Plaintiffs submitted a FOIA request for various records relating to the arrests that took place on September 19, 2006, as well as records relating to immigration enforcement in Danbury generally. A copy of that letter is attached to this complaint as Exhibit A. This letter was received by the agency on October 25, 2006.

31. To date, Plaintiffs have received no correspondence from ICE regarding this FOIA request.

32. To date, ICE has not provided the records requested by Plaintiffs in their FOIA request, notwithstanding the FOIA's requirement of an agency response within twenty (20) working days.

33. Plaintiffs have exhausted the applicable administrative remedies with respect to their FOIA request to ICE.

34. ICE has wrongfully withheld the requested records from Plaintiffs.

### FIRST CLAIM FOR RELEIF:
### Defendant DHS Failed to Disclose and Release Records
### Responsive to Plaintiff's Request

35. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 – 34 as if repeated and reincorporated herein.

36. ICE, a component of DHS, has violated Plaintiffs' rights to DHS records under 5 U.S.C. § 552.

### SECOND CLAIM FOR RELEIF:
### Defendant DHS Failed to Affirmatively Disclose Records
### Responsive to Plaintiff's Request

37. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 – 34 as if repeated and reincorporated herein.

38. Defendant's failure to make its records available to the public violates 5 U.S.C. § 5 U.S.C. § 552(a)(1)-(2).

## Requested Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Assume jurisdiction over this matter;

2) Order Defendant to disclose the requested records in their entireties and to make copies available to Plaintiffs;

3) Provide for expeditious proceedings in this action;

4) Award Plaintiffs costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

5) Grant any other relief the Court deems appropriate.

Dated December 14, 2006
New Haven, Connecticut

Respectfully Submitted,

By: /s/ Stephen Wizner
Stephen Wizner, Esq. ct 00217
Michael Wishnie, Esq.
Geri Greenspan, Law Student Intern
Stacie Jonas, Law Student Intern
Simon Moshenberg, Law Student Intern
Justin Cox, Law Student Intern
Michael Tan, Law Student Intern
JEROME N. FRANK LEGAL SERVICES ORGANIZATION
P.O. Box 209090
New Haven, CT 06520-9090
Phone: (203) 432-4800
Counsel for Plaintiffs